UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATE OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>CLIFTON GIVEN,<br><br>    Defendant, | )<br>)<br>)<br>)   **Docket No.: 2:20-cr-00060-GZS**<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT'S SENTENCING MEMORANDUM**

Clifton Given is scheduled for sentencing on May 11, 2022. He will appear in person before the Court for sentencing after proceeding by video for all other hearings in this matter. The defense will present a sentencing request at the time of the hearing, but asks the Court to consider this memorandum to provide context in advance of the sentencing determination.

**PSR**

The defendant's sole outstanding objection to the PSR has been resolved by agreement. The PSR calculates an offense level 33, criminal history II, with an advisory guideline range of 151-188 months. In this case, as in virtually all possession of child pornography cases, the defense notes that the Sentencing Commission has raised concerns about the application of enhancements pursuant to USSG §2G2.2 that act to increase base offense levels in almost all such cases. Here, for example, the application of the guideline enhancement for "use of a computer or computer service" results in an increase of 2 levels. PSR ¶ 24.

The defendant does not object to the enhancement pursuant to USSG §2G2.2(b)(5), which was applied based on a 2004 Sagadahoc County Sheriff's Office report that outlined an investigation into allegations made when the defendant was 15 years old. PSR ¶ 23A. Those allegations took place almost twenty years ago, Cliff was only fifteen years old and was and unaccompanied at the time of his interrogation, and no charges were pressed in that matter.

**Clifton Given**

The PSR provides a very thorough narrative of Mr. Given's personal and family history. There are several points that bear highlighting. It is particularly noteworthy that Cliff has been on bail for almost two years. In that time, he has been successful – both in terms of his compliance with release conditions, and in terms of rehabilitation. He has demonstrated his ability to live and work and maintain sobriety and mental health.

Cliff is a hard-working Maine resident who has a strong history of employment and self-sufficiency. He provides health-insurance for his three children and pays court-ordered child support for all of them. PSR ¶48. His son, age 13, has been diagnosed with autism and requires a great deal of support, provided through the health insurance that Cliff provides. There are no allegations that Cliff has ever acted inappropriately with his children. On the contrary, he had a positive relationship with all three of them, and was their primary caregiver during the day before his arrest because he worked on the second shift at Bath Iron Works since March of 2016.. PSR ¶ 48, 55. In his professional life, Cliff has been promoted several times and recognized by the company for cost-saving efforts

and excellent service.

Though he has found professional success in adulthood, Cliff was abandoned by his mother at the age of three and subjected to various forms of neglect and abuse throughout his childhood. PSR ¶ 46, 47. He was sexually abused as a toddler by one of his mother's male partners, but for much of his life was unaware of the abuse because his family kept the knowledge from him. PSR ¶47. It is only since his arrest that he has gained insight into his own behavior and its likely links to his experience of sexual assault as a child. Cliff has been on his own since he was a child, unprotected by his parents and caregivers.

Cliff noted in the presentence investigation interview that he was diagnosed with ADHD as a child but was never medicated for it. PSR ¶51. Cliff also reported that now, after engaging in therapy and treating his mental health conditions, he can reflect on his childhood and see that he was struggling with untreated depression and anxiety for most of his life. PSR ¶ 51. Cliff is now in a stable, long-term relationship, is sober, seeks treatment for his mental health conditions, and has developed healthy, appropriate coping mechanisms to support him as he processes and investigates his trauma and formulates a plan for moving forward after a period of incarceration.

**Guideline 2G2.2 and the U.S.S.C.**

The Sentencing Commission has repeatedly studied the non-production child pornography guidelines applicable in this case. In 2012, the Commission issued a report concluding that guideline 2G2.2 does not work as intended and a revision is

needed.[1] Specifically, the Commission found:

> [A]s a result of recent changes in the computer and Internet technologies that typical non-production offenders use, the existing sentencing scheme in non-production cases no longer adequately distinguishes among offenders based on their degrees of culpability. Non-production child pornography offenses have become almost exclusively Internet-enabled crimes; the typical offender today uses modern Internet-based technologies such as peer-to-peer ("P2P") file-sharing programs that were just emerging only a decade ago and that now facilitate large collections of child pornography. The typical offender's collection not only has grown in volume but also contains a wide variety of graphic sexual images (including images of very young victims), which are now readily available on the Internet. As a result, four of the of six sentencing enhancements in §2G2.2 — those relating to computer usage and the type and volume of images possessed by offenders, which together account for 13 offense levels — now apply to most offenders and, thus, fail to differentiate among offenders in terms of their culpability. These enhancements originally were promulgated in an earlier technological era, when such factors better served to distinguish among offenders. Indeed, most of the enhancements in §2G2.2, in their current or antecedent versions, were promulgated when the typical offender obtained child pornography in printed form in the mail.
> U.S.S.C. Report to Congress, pp. 18-19.

This case demonstrates all of these changes in the modern non-production offender – use of a phone, use of file sharing programs that facilitate large collections of child pornography, and the changes in the volume and type of collection that has resulted from increased use of the internet. The application of these enhancements results in advisory sentences that are disproportionate to the conduct involved in non-production offenses.

The Commission's June 29, 2021 report[2] on non-production child pornography

---

[1] https://www.ussc.gov/research/congressional-reports/2012-report-congress-federal-child-pornography-offenses

[2] https://www.ussc.gov/research/research-reports/federal-sentencing-child-pornography-non-production-offenses

offenses included the same analysis and concern. The report notes "judges have continued to sentence most non-production child pornography offenders below their guideline ranges, most often by imposing variances pursuant to 18 U.S.C. § 3553(a). *Id.*, p. 9. In fiscal year 2019, less than one-third (30.0%) of non-production child pornography offenders received a sentence within the guideline range. *Id.*, p. 5. The majority of offenders (59%) received downward variances. *Id.*

**Restitution, Retribution and Rehabilitation**

In this case, the Government has requested substantial restitution and provided the defense with victim impact statements and requests for restitution. These statements are a testament to the harm that child pornography inflicts – and the requests for restitution provide the Court with a concrete way for the Defendant to contribute to the mitigation of harm. He cannot pay restitution if he is incarcerated for over ten years. He cannot continue to rehabilitate himself if he is incarcerated for over ten years. The vulnerability of defendants like Cliff in BOP custody is widely known, and the dearth of effective services for him will only further harm not only him, but his community.

The Sentencing Commission continues to express concern over the guideline scheme in non-production cases because it results in advisory guideline ranges that are disproportionate to the behavior at issue. Rather than effectively deterring defendants like Cliff Given, guideline range sentences in these cases traumatize them and render them less likely to ever contribute productively to their community. Cliff is more than a federal felon. He is a wage earner, an ambitious young man, a provider, and a father. Stripping him of

his ability to fulfill his positive potential by incarcerating him for a lengthy prison term runs counter to the goal of rehabilitation, a goal that serves to protect the community in a far more meaningful way than detention in BOP custody can. Defendants like Cliff are not irredeemable.

**Conclusion**

Cliff has accepted responsibility, pled guilty, and understands that he must serve a period of incarceration. Since his arrest, he has achieved and maintained sobriety, begun therapy, and gained insight into his consumption of illegal materials. The nature and extent of his illegal conduct must be balanced against his own history of trauma and mental illness. His evident desire to continue treatment and rehabilitation, the need to register as a sex offender, pay a great deal of restitution, and abide by special conditions of supervise release will support him as he returns to the community. Cliff's success on bail since 2020 indicates that he can succeed in the community upon release.

Dated this 28th day of April, 2022, at Portland, Maine.

Respectfully submitted,

/s/ Daphne Hallett Donahue
_____
Attorney for Defendant
Assistant Federal Public Defender
P.O. Box 595
Portland, Me 04112-0595
207-553-7070
FAX: 553-7017
Daphne_Donahue@fd.org

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

**CERTIFICATE OF SERVICE**

I, Daphne H. Donahue, Esq., attorney for Clifton Given, hereby certify that I have caused to be served via ECF a copy of this motion upon Todd Lowell, Assistant United States Attorney, and all counsel of record via the ECF system.

Dated this 28th day of April, at Portland, Maine.
Respectfully submitted,

*/s/ Daphne Hallett Donahue*
_____
Daphne Hallett, Donahue, Bar No. 5108
Attorney for Defendant